# Brown *v.* McCullough, Appellant.

*Equity—Subrogation—Taxes and municipal liens—Sale of undivided interest in land—Contribution.*

1. Where there is a sale of an undivided one-third interest in land and taxes and municipal liens which are charged against the whole interest in the land are paid out of the proceeds of a one-third interest, the judgment creditor whose fund is diminished by such payment of taxes and municipal liens out of the fund, is subrogated to the right of the owner of the one-third interest to contribution for taxes and municipal liens as against the owners of the other two-thirds.

*Equity—Want of party—Waiver of relief.*

2. At the hearing of an equity case the plaintiff may obviate an objection for want of a particular party by waiving the relief he is entitled to against that party.

*Equity—Subrogation—Laches.*

3. While a person entitled to subrogation may by delay lose his right to enforce it against an intervening party, he does not by such laches alone lose it against the other original parties from whom he could enforce contribution.

4. Where land subject to taxes and municipal liens is owned by three persons in common, and one of the owners while he is indebted to the

other two, sells the land, and afterwards the interest thus sold is again sold on execution and the proceeds used to pay off liens against all the interests in the land, the right to subrogation will not be defeated because the original cotenant was indebted to the other cotenants.

5. Where one of several cotenants pays taxes and municipal liens on the land his equity of contribution will be limited to the land involved, and he will not be entitled to a personal judgment or decree against those who are bound to contribute through the remedy of subrogation.

Argued Dec. 4, 1914.    Appeals, Nos. 200 and 201, Oct. T., 1914, by defendants, from decree of C. P. No. 3, Phila. Co., March T., 1911, No. 4,712, on bill in equity in case of John Wilson Brown, Jr., v. Sarah J. McCullough, Martha E. Taylor, The Mack Paving Company, The Tradesmen's Trust Company and the City of Philadelphia.    Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Decree affirmed and modified.

Bill in equity for subrogation.

McMICHAEL, J., filed the following opinion:

In order to have a complete understanding of this case the statement of the material facts is necessary. Matthew McCullough was the owner of several tracts of land situated in Germantown, described in the bill. He died intestate.    Sarah J. McCullough, Martha E. Taylor and James A. McCullough inherited the land described from their father, Matthew McCullough, and held the land as tenants in common.    No partition was had.    The various tracts of land became subject to municipal liens for street improvements and to liens for unpaid taxes, amounting in all to over $3,000.    After Matthew McCullough's death, a number of judgments were entered against James A. McCullough.    The earliest of the judgments was one of the firm of Thomas Kenworthy Sons for $13,274, entered April 20, 1907. James A. McCullough conveyed to Samuel Dotlow his

one-third interest in this land by a deed dated February 21, 1911. Samuel Dotlow gave a judgment note to Bessie Sorin. The deed was recorded on March 8, 1911. Judgment was entered on the note of Bessie Sorin for the amount of $632.33 March 9, 1911. Execution was issued and a sheriff's sale had thereon on April 3, 1911. The Kenworthy judgment was purchased by John Wilson Brown, Jr., the plaintiff in the present bill in equity. He placed it in the name of Jessie Leckie Hughes. At the sheriff's sale on April 3, 1911, Sidney E. Smith was the first bidder. The amount of his bid was $7,600 and the property was knocked down to Sidney E. Smith. He deposited $125. Mark W. Collet entered his name as second bidder and paid $125 as a deposit. Sidney E. Smith was unable to raise the money to make good his bid of $7,600 and he applied to the Manayunk National Bank for a loan on the entire property. The bank agreed to loan the money provided that the deed for the one-third interest of the defendant in the execution was taken by Sidney E. Smith and held by him until such time as the principal advanced by them should be paid, and that the mortgage should cover the whole interest of all three owners.

On or about May 3, 1911, Sidney E. Smith saw John Wilson Brown, Junior, the real owner of the judgment (although the fact of his ownership was unknown to Sidney E. Smith), and Mark W. Collet, who represented as attorney, according to the docket, the then holder of the judgment, Jessie Leckie Hughes, to whom the judgment had been transferred either upon the day of the sheriff's sale or a day or two before, and Sidney E. Smith offered to buy the judgment. This offer was refused. In the meantime Mark W. Collet had had allowed a rule on the sheriff to deliver a deed to his client as the second purchaser.

The recollections and statements of Mr. Smith and of Mr. Collet and of Mr. Brown and of Mrs. Hughes (who became Mrs. Collet about the time of the negotiations),

differ radically.  Mr. Smith says that he told them he had borrowed the money; that one of the conditions the lender made was that he should hold the title until they were paid, and that the mortgage should cover the entire three-thirds interest.

There was another interview on May 5, according to the testimony of Mr. Smith, and he says that Mr. Collet told him that he and Mr. Brown had come to the conclusion that they had better take the $3,500, but that they had been unable to get Mrs. Hughes to agree to it.  As to this interview there were statements made by Mr. Smith and denied by Mr. Collet, and their statements are so radically divergent that it is not possible that the difference is one of recollection.  One or the other of these men is not telling the truth but is fabricating a story to suit his own side of the case.  But as this divergence of statement is not material to the determination of the facts and law, the court, after mature deliberation, has decided to express no opinion as to the truth of the statements.

There is another statement with regard to which the difference is almost as radical, and that is the statement made by Mr. Smith (in this testimony on p. 4 of the testimony taken on December 11, 1913) as follows:

"I made the proposition then to Mr. Collet on behalf of these sisters, that I would pay him a flat sum of $3,500, in full for a release by him, or a release by her, it was at that time, of all claims and demands she might have against this property and against the fund in the sheriff's hands under that judgment."  It may be that Mr. Smith is stating accurately what occurred in the first interview, but the testimony is positive that the proposition made during the first interview was rejected. At this interview Mr. Smith denied any legal liability on the part of these two women to pay anything to the holder of the judgment by reason of the municipal claims.  He said that he said he did not care anything about that phase of it; that he was there, if he could

succeed, to make a settlement with them by the payment of $3,500, cash flat, and that he demanded an assignment of the judgment, and they declined to make an assignment because they wanted to pursue James A. McCullough further under the judgment, "and I said to him, if that was the only reason he had for retaining the judgment I would not insist on the assignment, but I would require an agreement from him that if we needed the judgment to protect our title as to the one-third he would allow us the use of it. He told me I could rely on his word as a member of the bar that he would do that at any time." This statement of Mr. Smith's is denied by the witnesses for the plaintiff, and the preponderance of the evidence is in their favor. On cross-examination Mr. Smith further stated that he made the condition to Mr. Collet, "that if it became necessary to protect our title thereafter, he should allow us to use that judgment for that purpose. And he assured me that he would do that and that I did not need any written agreement, but I could depend on his word as a member of the bar." Mr. Smith was further asked on cross-examination whether he did not say to Mr. Collet, "That if some other creditor should later come in and attack this whole transaction, to wit, the conveyance by McCullough of his one-third interest to Dotlow and Dotlow's confession of judgment and the subsequent sheriff's sale as being a contrivance to defraud other creditors—that if that should be done they would use their judgments to protect you? Isn't that the proposition that you had with Mr. Collet and the one you are referring to in your testimony in chief?" Answered, "I cannot answer that yes or no because two years and a half have elapsed since it happened."

As the case of the defendants depends largely upon their ability to show that Mr. Brown, the owner of the judgment, and Mr. Collet, representing the owner of the judgment, agreed with Mr. Smith that the money paid in should be in full for all demands and that there was a

waiver and release of Brown's right to substitution or subrogation as against the ladies who own the two-thirds interest in the land. The court is of opinion, and has so found in answer to requests for findings of fact, that there was no agreement by Brown to waive his right to subrogation. This in the opinion of the court is the crux or determining point of the controversy, for, under the law of Pennsylvania, it seems to the court to be an established rule of law that where there is a sale of an undivided interest in land, and taxes and municipal liens which are charged against the whole interest in the land are paid out of a one-third interest, that the judgment creditor whose fund is diminished by such payment of taxes and municipal liens out of the fund is subrogated to the right of the owner of the one-third interest to contribution for taxes and municipal liens as against the owners of the other two-thirds. The views of the court in this regard are stated categorically in the answers to the requests for findings of fact and law. The trial judge is of opinion that if the case were dependent upon Smith's testimony alone his testimony would fail to make out a sufficiently strong case for the defendants to deprive the plaintiff of his equitable right to subrogation, and, as the testimony of Smith was contradicted in all its essential points by two witnesses and in some essential points by three witnesses, the trial judge is of opinion that the preponderance of the evidence and the weight of the testimony is against the defendants.

To resume the history of the case, after Mr. Smith had found that he was unable to purchase or control by transfer the Kenworthy judgment which was owned by Brown, he went with Mr. Collet to the sheriff's office, and there gave Collet a certified check for $3,500 and offered to pay into the sheriff a check for $3,186.95, and the offer was that Collet, for Brown, should receipt for the balance of the bid. Mr. Russell, the sheriff's solicitor, however, declined this, and after some col-

loquy, Collet, for Brown, paid in an amount sufficient to bring the payments to the sheriff up to the amount of the bid. There were some errors in calculation, Mr. Smith having overpaid somewhat, and this was adjusted later. Out of the fund were paid the costs, the taxes prior to 1911, $354.90, taxes for 1911, $129.50; a city claim C. P. No. 5, December T.; 1909, No. 1932, $1,339.06; city claim C. P. No. 5, December T., 1909, No. 1933, $1,196.43, and the balance, $4,365.05, was paid to Michael J. Ryan, attorney for John Wilson Brown, Junior, on account of the Kenworthy judgment owned by Brown.

The bill in this case, asserting the right to subrogation, was filed on May 13, 1911, and the mortgage to the Manayunk National Bank was recorded subsequently on May 17, 1911.

The facts have now been stated sufficiently at length to enable the court to give its views upon the questions of law and equity involved. There is no doubt that subrogation is an equitable right and will not be decreed where it works injustice; but the law of Pennsylvania in regard to subrogation in cases similar to the case the court is now adjudicating has been settled since the case of Moroney v. Copeland, 5 Wharton, 407, as long ago as 1839. In that case SERGEANT, J., delivering the opinion of the Supreme Court, said: "The next question is as to the taxes, and the claim for iron pipes, filling, paving and curbing foot-ways, which by act of assembly are liens on the property in which Brown and Copeland had an equitable estate at the time they were assessed and incurred. The interest of Copeland was sold by execution on a judgment against him and the money was brought into court; and the question is, whether the whole of these claims are to be paid out of the purchase money, or only half of them or none of them? The general rule is, that with the exception of the first mortgage (which is exempted by act of assembly), a judicial sale converts the interest sold into

money, and divests all liens on the land existing at the time of sale. The lien here resembles a judgment against both: it bound the interest in the whole land; the tenants in common being respectively entitled to an undivided moiety in the whole, neither having the whole of an undivided moiety. On a sale of the interest of one tenant in common by execution on a judgment against him, the lien of a prior judgment against both is payable out of the proceeds: and the lien of these taxes being against the land of both jointly, is in the nature of a joint judgment, and must be paid out of the proceeds of sale. But as the effect of such payment is to take the interest of one to pay the whole, he, or those who represent him, have a right of contribution from the other cotenant, to reimburse them the one-half thus paid. Copeland would lose one-half of this money now applied to the payment of Brown's share of the taxes: and equity would seem to require, that he should be subrogated to the liens of these claims on Brown's interest, so far as respects the half of them thus paid, according to the decision in Ramsey's Appeal, 2 Watts, 228. The act of June 16, 1836, sec. 86, gives the court power in these cases of distribution of money raised by execution, 'to hear and determine the same according to law and equity.' It would be equitable in the present case to make such a decree." This case announces a rule which has been followed in Pennsylvania ever since and which applies to the facts of the present case.

In the case of Gearhart v. Jordon, 11 Pa. 325 (1849), the headnote states: "As between purchasers in common of an estate bound by a joint lien, each is bound to contribute only its proportion towards the discharge of the common burthen, and beyond this is to be considered simply as the surety of the remaining purparts. In this respect they are to be treated as the several estates of joint debtors, one being surety of the others; and if the purpart of one is called on to pay more than

its proportion, the tenant or his lien-creditors are entitled to stand in the place of the satisfied creditor to the extent of the excess, which ought to have been paid out of the other shares." In that case BELL, J., delivering the opinion of the court, said: "That case is identical in principle with Neff v. Miller, 8 Pa. 347. That determination, and the authorities upon which it is based, settle that subrogation is admissible wherever a joint creditor of two funds, belonging to different debtors, appropriates one of them in payment of his debts, in disappointment of another creditor of that fund."

In Cottrell's App., Bower's Est., 23 Pa. 294 (1854), WOODWARD, J., said: "Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor. Actual payment discharges a judgment or other incumbrances at law, but where justice requires it we keep it afoot in equity for the safety of the paying surety."

In Douglass's App., 48 Pa. 223, the headnote is: "In distributing the proceeds of a sheriff's sale, the rights of claimants must be determined as they were at the time of the sale, the liens being divested by the sale, the lienholders are turned over to the proceeds, and no lien or right thereto can be afterwards acquired."

From these cases it would appear that the rule is correctly stated in the first request for finding of law submitted on behalf of the plaintiff and affirmed by the court as follows:

"1. A judgment creditor of a tenant in common who has been compelled to receive at the distribution of a fund arising from a sheriff's sale of an interest in common of a debtor an amount less than his judgment because a portion of the fund arising from such sheriff's

sale of his debtor's interest in the land being used to pay a municipal lien or claim against the whole premises is entitled to be subrogated against the other co-owners of the land to the rights of the lienors to the extent of the amount that should equitably have been paid by the said co-owners."

To defeat this right of the plaintiff the defendants have asserted in requests for findings of fact numbers 5 and 6, submitted on behalf of defendants:

"5. By an agreement of settlement entered into between the said Sidney E. Smith and the said Mark W. Collet, the said Collet agreed on behalf of his client to accept $3,500 in lieu of the somewhat larger sum which would otherwise be received by his client from the sheriff on account of the said judgment against James A. McCullough if the full amount of $7,600 bid by the said Sidney E. Smith, was paid by him in settlement with the sheriff.

6. It was a term of the agreement of settlement made between Mark W. Collet and Sidney E. Smith, that the defendants, Martha E. Taylor and Sarah J. McCullough, should have the right at any time to use the judgment obtained by Kenworthy and others against James A. McCullough, to protect the said real estate described in the bill from any further claims of any kind by any creditor of James A. McCullough, including the plaintiff."

The court, after a careful consideration of the testimony and of the briefs submitted, has declined to affirm either of these findings of fact.

The defendants, Sarah J. McCullough and Martha E. Taylor, state in their answers, that they "negotiated with Jessie Leckie Hughes and John Wilson Brown for the purchase of the judgment held by her. These negotiations culminated in the payment by me and by my sister of the sum of $3,615 on May 5, 1911, to Jessie Leckie Hughes for a full release of the tract of land sold by the sheriff as aforesaid from the judgment held by her."

The proofs, however, do not sustain the allegations of the answer. As has been stated, the only evidence tending to establish these facts was given by Sidney E. Smith, and the court has already stated that in the opinion of the court his evidence is insufficient to establish these facts, and as it is met by the denial of two witnesses, perhaps of three witnesses, the preponderance and weight of the testimony is against him.

The court does not think that the supplemental answers have probative value, because they were not sworn to positively by the defendants, but simply upon information and belief: Gantt v. Cox, 199 Pa. 208-215, opinion by MITCHELL, J.; Riegel v. American Life Insurance Company, 153 Pa. 134-145; Bussier v. Weekey, 11 Pa. Superior Ct. 463.

Another defense is presented. The defendants aver that a sum of money large enough to pay the sheriff and Smith's fees and expenses was obtained from the Manayunk National Bank through a mortgage on the entire tract jointly, by the purchaser at the sheriff's sale of Dotlow's interest—Sidney E. Smith—and Miss McCullough and Mrs. Taylor. The court is of opinion and finds as a fact that no notice, either by record or parol, was given to the owners of the Kenworthy judgment of the mortgage to the Manayunk National Bank prior to the filing of the bill for substitution and subrogation. It may be that there was general talk about how the money was raised, but there was nothing disclosed which amounted to legal or equitable notice.

Mr. Brown was asked (page 63):

"Q. Did you at the time the settlement was made by the sheriff or at any previous time know, or were you informed, that part of the money paid to the sheriff was obtained from the Manayunk National Bank on a mortgage? A. I did not know it from any source at all. Q. Was the mortgage made to the Manayunk National Bank ever mentioned at any of these interviews with Mr. Smith? A. Not as the Manayunk National Bank.

·I understood the money was being raised by mortgage, but the name of the mortgagee was not given, nor was it inquired into."

The mortgagee took its mortgage without any release, written or oral, of the plaintiff's right to be subrogated to the municipal liens or tax claims so far as the purparts of Miss McCullough or Mrs. Taylor were concerned. The Manayunk National Bank was not in any way misled by the plaintiff, Brown, by Collet, or by Mrs. Collet. It therefore took its mortgage subject to Brown's rights of subrogation against the purparts of Miss McCullough and Mrs. Taylor. And no notice of this mortgage has been brought home to the plaintiff, John Wilson Brown, Junior, or to his attorney, Mr. Collet, prior to the recording of the mortgage on May 17, 1911.

Another defense is that James A. McCullough was indebted to each of his sisters, defendants in the bill, "In the sum of $2,450, received by him as my share of the damages awarded to me against the city of Philadelphia in the matter of the opening of Bowman Street through part of the land concerned herein, the amount of which damages were collected and retained by the said James A. McCullough and have never been paid over to me by him." If this suit were by James A. McCullough to enforce his right of subrogation against his sisters the withholding of money by him for them might be asserted as a defense to his claim. But it does not appear when the money became due from James A. McCullough to his sisters or that it was prior to the judgment obtained by Kenworthy against McCullough and sold and transferred to the plaintiff, or prior to the sale by McCullough to Dotlow. It is an answer also to his defense that it was Dotlow's land, not James A. McCullough's, that paid the portion of the liens that were due by Miss McCullough and Mrs. Taylor. There is no right to a set-off against Dotlow, and, consequently, no right to a set-off against Brown's right of abro-

gation.   Besides, the right of subrogation is not a personal right and cannot be assigned or waived to the detriment of a lien creditor by the person primarily entitled to it.   In Huston's App., 69 Pa. 485, it was held that a surety whose land had paid a joint judgment against himself and his principal, could not assign his rights of subrogation against his principal under this judgment, to the detriment of one of his own lien creditors, whose judgment was immediately subsequent and had received less than its full amount at the same sale.

It has been contended that the bill should be dismissed because the Manayunk National Bank has not been made a party.   It is to be noticed that the Manayunk National Bank has not asked to become a party, and, under the evidence and the opinion stated by the court, it is not in the opinion of the court necessarily a party to this controversy.   It may be that the security of the land for the value of the mortgage may be diminished somewhat if Sarah J. McCullough and Martha E. Taylor refuse to pay the loan which the court of equity finds that they owe, and it becomes necessary to enforce the decree of the court against the lands covered by the mortgage.   But the interest of the Manayunk National Bank is so remote that we do not think the failure to include them as plaintiffs or defendants necessarily defeats the right of the plaintiff and requires that the bill be dismissed. . Counsel for plaintiff has called our attention to a case decided by the Supreme Court of Indiana, Chapman v. Sullivan, 120 Indiana, 50. ' That case was in its facts very like the present one.   The question was as to the precedence between a mortgagee and a cotenant of the mortgagor, claiming subrogation to liens against the common property by reason of their payment by her, and it was decided by the Supreme Court of Indiana in favor of the claimant of subrogation.

· [The court is of opinion, therefore, that the plaintiff,

John Wilson Brown, Junior, is entitled to subrogation or substitution to the tax claims and municipal liens, and is entitled to demand that they be paid as to one-third each by Sarah J. McCullough and Martha E. Taylor.]

And now, to wit, July 3, 1914, upon consideration of the bill, the answers thereto and the amendments to the answers, replication and evidence taken in this case, the court orders and decrees as follows:

1. That each of the defendants, Sarah J. McCullough and Martha E. Taylor, be ordered and directed to pay over to John Wilson Brown, Jr., the plaintiff, the sum of $1,006.37, and interest thereon from May 13, 1911, the date of the distribution by the sheriff of Philadelphia county of the fund realized by the sale of the one-third interest of Samuel Dotlow in and to the following described lots or pieces of ground: . . . .

2. That the plaintiff, John Wilson Brown, Jr., do recover from and out of the right and interest and estate of the defendant Sarah J. McCullough in the afore-described lots or pieces of ground, the sum of $1,006.37, and interest thereon from May 13, 1911, and that the plaintiff, John Wilson Brown, Jr., do recover from and out of the right, and interest and estate of the defendant Martha E. Taylor, in the afore-described lots or pieces of ground, the sum of $1,006.37, with interest from May 13, 1911, and that a lien for these sums be imposed upon each of the said rights, interests and estates in favor of the plaintiff the said John Wilson Brown, Jr.

3. That the plaintiff, John Wilson Brown, Jr., be subrogated to the rights and securities of the defendants, the city of Philadelphia, the defendant the Mack Paving Company, the defendant the Tradesmen's Trust Company, against the interests, rights and estates of the said Sarah J. McCullough and Martha E. Taylor, in and to the lots or pieces of ground aforesaid, to the extent of the sum of $1,006.37, and interest from May 13, 1911, against the said interest, right and estate of Sarah J.

McCullough and to the extent of the sum of $1,006.37, and interest from May 13, 1911, against the said interest, right and estate of Martha E. Taylor.

*W. W. Porter*, of *Porter, Foulkrod & McCullagh*, for appellants.—The bill should have been dismissed because of the nonjoinder as a party of the Manayunk National Bank, the mortgagee of the property against which the court's decree operates to perpetuate (for the benefit of the plaintiff) certain prior liens, which had been previously paid out of the proceeds of the said mortgage. The right of the plaintiff, as a judgment creditor, to be subrogated to prior liens which were divested by the sheriff's sale, was lost through the intervention of the right of the Manayunk National Bank as mortgagee, the proceeds of whose mortgage was utilized (with the knowledge of the plaintiff) to make the settlement with the sheriff in which the plaintiff participated as a distributee: Robeson's App., 117 Pa. 628; Allegheny V. R. Co. v. Dickey, 131 Pa. 86; McGinnis' App., 16 Pa. 445; Wallace's Est., 59 Pa. 401; Hoff's App., 84 Pa. 40; Gring's App., 89 Pa. 336.

The plaintiff, by reason of his prior negotiations with the defendants, and because his judgment debtor—in whose shoes he stands—was indebted to each of the defendants, in an amount in excess of the money claimed by the plaintiff, is without equity to maintain this bill. This being a proceeding in equity for subrogation, the plaintiff is not entitled to a general decree for the payment of money, which the court below entered against the defendants: Iron City Tool Works v. Long, 44 L. I. 28; Hogg v. Longstreth, 97 Pa. 255.

*Louis L. Tafel*, with him *Michael J. Ryan*, for appellee.—Plaintiff was entitled to contribution from appellants for their proportionate share of the taxes and liens against the whole tract, which were paid from the one-third interest against which his judgment was a

lien and this contribution should be enforced by subrogating him to the liens. In no event should the bill be dismissed or remanded because of the mortgage to the bank, as the decree for subrogation can be so molded by this court that the plaintiff's subrogation shall be subordinate to the mortgage of the bank, in case the court reaches the conclusion that the mortgagee should have been made a party or that its equity is equal to that of the plaintiff. But apart from any waiver the decree should be affirmed because plaintiff's rights are superior to those of the bank. Should it be decided, however, that the equity of the plaintiff is not superior to that of the bank, the decree can readily be molded by this court, so that the plaintiff's subrogation shall be subordinated to the rights of the mortgagee: Bud v. Oliver, 148 Pa. 194.

There was no waiver or release of either contribution or subrogation as a result of the negotiations between the parties. The personal indebtedness of James A. McCullough to his sisters cannot be set off against plaintiff's claim against them for contribution: Huston's App., 69 Pa. 485.

Aside from the remedy by subrogation, the plaintiff is clearly entitled to a decree in equity for contribution against appellants out of their two-thirds interests in the land. Contribution is an equitable right, of which subrogation is but one means of enforcement, and it may exist independently of the subrogation. In this question, the mortgagee has no concern, as it does not affect his lien.

OPINION BY KEPHART, J., May 14, 1915:

The opinion of the learned president judge of the court below, which will be found in the report of this case, fully sustains appellee's right to subrogation. The appellee agreed at the argument that the decree should be modified so as to subordinate his claim to the lien of the Manayunk National Bank. It is within appellee's

right to have the decree so modified. "The plaintiff may at the hearing obviate an objection for want of a particular party by waiving the relief he is entitled to against that party:" Daniels' Chancery Practice, p. 293; Story's Eq. Pleading, sec. 228; Budd v. Olver, 148 Pa. 194. "Subrogation is a matter of grace, not of right, and is a creature of pure equity. It will never be decreed where it works injustice:" Budd v. Olver, supra. No effort was made by the appellee to secure contribution and subrogation on account of those liens which had absorbed a portion of the fund that he was entitled to receive until after the bank's mortgage was executed and delivered. Those who may claim these rights should move promptly. Delay, if permitted, would seriously interfere with the rights of intervening parties. The Manayunk Bank was such intervening party. The appellee would only be injured by this modification to the amount that his claim, in event of a sale, might be reduced by reason of its lien being subordinated to that of the bank's. His laches, in his efforts to secure subrogation, would not inure to the benefit of those whose properties have been relieved of liens at the expense of the appellee. Appellee may still have these liens kept alive for his use and benefit against these properties or interests. A part of the money from the sheriff's sale of the cotenant's interest, against which appellee had his lien, was used to pay in full claims which were liens on all interests, thus diminishing the amount of money appellee was entitled to receive. Appellee's right to contribution would not be destroyed or its enforcement through the equitable remedy of subrogation lost through his laches. "It is a settled principle that the holder of an equity must be vigilant in asserting it, if he would have the aid of a chancellor. Laches in such a holder will always postpone him to one who may have been injured by his inertness:" Douglass's Appeal, 48 Pa. 223.

The complaint that the defendants, cotenants, had a set-off or claim against James A. McCullough, which

would defeat any right of subrogation in him, or his judgment creditors, for the reason that during the cotenancy of James A. McCullough and defendants, and before he sold his interest to the execution debtor, he was indebted to them, was answered by the learned court below as follows: "It does not appear when the money became due from James A. McCullough to his sisters. (defendants) or that it was prior to the judgment obtained by Kenworthy against McCullough and sold and transferred to the plaintiff or prior to the sale by McCullough to Dotlow. It is an answer also to his defense that it was Dotlow's land, not James A. McCullough's, that paid the portion of the liens that were due by Miss McCullough and Mrs. Taylor. There is no right of set-off against Dotlow, and consequently no right to a set-off against Brown's right of subrogation." Dotlow purchased the interest from James A. McCullough and he immediately gave a note upon which judgment was entered, execution issued and the land sold and the proceeds from its sale was used by the sheriff to pay the whole of the taxes and municipal liens to the loss of the appellee, Brown. Had there been any surplus from the sale after the payment of these liens, Dotlow, not McCullough, would have received it. When McCullough sold his interest to Dotlow, the appellee was a creditor of McCullough and a lien creditor of the land conveyed to Dotlow. Any claim which the cotenants had against McCullough while their cotenancy existed, and after its sale, was a personal claim. It was not in judgment, or in suit, and not a lien upon any interest McCullough might convey. McCullough is not a party to this proceeding. When he sold his interest it was subject to the tax and municipal liens against the entire tract, and the judgments against him. While the equity of subrogation may be said to be worked out through the debtor, it is not subject to the debtor's control by assignment or release, but is personal to the judgment creditor

whose rights are affected. Where the debtor is a co-tenant and conveys his interest to another and after-wards this interest is sold on execution and the proceeds pay off judgments against all interests, the right to subrogation would not be defeated or interfered with because the original cotenant, who thus conveyed his land, was indebted to the other cotenants. The right of subrogation would follow the interest upon which the judgment was a lien, unaffected by secret equities in favor of creditor cotenants, who have not established as a preference their claims upon the record. The rule may be carried further: had the cotenant not made his conveyance and owned his interest at the time the sher-iff's sale took place, this equitable right of subrogation, as to the liens affected, would not be defeated or im-paired by secret counterclaims of his cotenants: Huston's App., 69 Pa. 485.

Where the joint judgment or lien is de terris, con-cerning which the right to be subrogated exists, this right would not include the right to have a personal judgment or decree against those who are bound to contribute through the remedy of subrogation. Taxes and municipal claims are liens against specific land. Where one of several cotenants pays them, his equity of contribution would be limited to the land involved. He would be entitled to a decree directing the sum due from his cotenants to be paid from these lands, and would be entitled to be subrogated to just such rights which the lien creditors possessed and no more. The first paragraph of the decree is clearly an order directing the defendants to personally pay the sum therein men-tioned, due as contribution. This part of the decree was beyond the power of the court to make.

The decree will be modified by limiting the collection of the amounts therein named to the land described in the decree. This is practically the effect of the second paragraph of the decree. The decree to be further modified by postponing the tax and municipal liens of

the city of Philadelphia, for use of Mack Paving Company, now for use of the appellee, and the city of Philadelphia, now for use of the appellee, in the amounts mentioned in said decree, to the mortgage of the Manayunk National Bank, and as thus modified the decree is affirmed, the cost of this appeal to be paid by the appellee.