## Culbertson's Estate.

Argued April 24, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William J. Brady,* with him *Henry D. O'Connor,* for appellant.—The evidence was insufficient to sustain the findings: Ralston v. Transit Co., 267 Pa. 257; Keys v. Hanscom, 288 Pa. 389; Miller's Est., 279 Pa. 31; Branski v. Wilmsen, 56 Pa. Superior Ct. 153; Spencer v. Colt, 89 Pa. 314; Loughran v Kummer, 297 Pa. 179.

If an appeal from probate of a will is allowed eleven years after probate, grantees and mortgagees of the devisees under said probate should be made parties thereto in the orphans' court: Findley v. Warren, 244 Pa. 64; Ebling v. Boro., 244 Pa. 505; Monessen Boro. v. Water Co., 243 Pa. 53; Hartley v. Langkamp, 243 Pa. 550; Loughran v. Kummer, 297 Pa. 179; Smith v. Markland, 223 Pa. 605.

The appeal from register of wills is barred by section 16 (a) of the Register of Wills Act of 1917: Kenyon v. Stewart, 44 Pa. 179; Broe v. Boyle, 108 Pa. 76; Bunce v. Galbrath, 268 Pa. 389; Warfield v. Fox, 53 Pa. 382; Cochran v. Young, 104 Pa. 333; Opp v. Chess, 204 Pa. 401; Baker's Est., 244 Pa. 350.

Contestant's were guilty of laches: Smith v. Blachley, 198 Pa. 173; Stevens v. R. R., 278 Pa. 284; McGrann v. Allen, 290 Pa. 574; Tozier v. Brown, 202 Pa. 359; Smith v. Beales, 33 Pa. Superior Ct. 570.

*Bernard J. O'Connell,* with him *Nathan Griffith,* for appellees.—The evidence was sufficient to sustain the findings: Phillip's Est., 244 Pa. 35; Thorndell v. Munn, 298 Pa. 1.

In the exercise of its equitable powers the court will reach far to prevent the triumph of fraud: McManus's Est., 285 Pa. 74; Bunce v. Galbrath, 268 Pa. 389; York Co. v. Thompson, 212 Pa. 561; Lackawanna Co.'s App., 296 Pa. 271.

A decree of probate, procured by fraud on the court, is a nullity and not protected by statutes of limitation: Bank v. Foster, 8 Watts 12; Mitchell v. Kintzner, 5 Pa. 216; Rubinsky v. Kosh, 296 Pa. 285; Jackson v. Summerville, 13 Pa. 359; Phelps v. Benson, 161 Pa. 418; Zeigler's Petition, 207 Pa. 131; Smith v. Markland, 223 Pa. 605; West Homestead Boro. v. Erbeck, 230 Pa. 316; Hambleton v. Yocum, 108 Pa. 304.

The paper filed of record is neither a will nor a paper purporting to be a will; Wall v. Wall, 123 Pa. 545.

There was no laches.

Appellees were not bound to join grantees and mortgagees as parties: Erie Co. v. Lamberton, 297 Pa. 406.

OPINION BY MR. JUSTICE SADLER, November 24, 1930:

Priscilla B. Culbertson, a widow, died on August 14, 1917, leaving to survive her several adult children, as well as two grandchildren, with all of whom her relations were friendly. Her husband had died in 1907, leaving a will dated 1901, not probated, but preserved among her papers. After her death, a most careful search was made by the children to discover any writing disposing of her estate, and particularly in the contents of a bureau where her personal effects were usually kept. None was found, and, as a result, letters of administration were granted on September 13, 1917, to her oldest son, Augustus. Within a few days thereafter, under circumstances to be hereafter narrated, the last named was induced by his younger brother, James, to forge a document purporting to be the act of his mother, so that the latter might, as stated, convince a girl, whom he desired to marry, of his financial prosperity.

James, the proposed beneficiary, secured his father's unprobated will, executed in 1901, and from it Augustus prepared a draft of a writing purporting to be that of the mother, signing it with her mark, and adding thereto as witnesses the names of the parties who had acted in that capacity for the father. He destroyed the first copy prepared, was dissatisfied with the second, and executed a third, which was taken to the decedent's house, placed in the drawer previously examined by the family, and its presence subsequently revealed in a research by the children, made at the suggestion of the wrongdoers. This document was then presented to the register of wills with a request that the letters of administration theretofore granted be revoked, and the supposed will probated. An attempt was made to prove by others the signatures of the two deceased witnesses, whose names

had been added to the writing by Augustus. The result was the grant of letters testamentary to James, and his assumption of the duties of executor.

By the terms of the father's will,—the language of which was largely used in preparing the one of the mother,—all of the children received equal shares. By the latter, the youngest son, James, who was between eleven and twelve years of age at the time of its supposed execution, was made executor, and all of the living children and grandchildren, representing a deceased son, were given equal small sums, but the bulk of the estate was bequeathed and devised to James, the present proponent, providing he remained single as long as testatrix lived, with direction that he should not dispose of the real estate until he became of age. The evidence showed he had reached majority unmarried when his mother died and before the forged will was probated in 1917. Upon his return from the war, in 1919, he transferred the money held as executor to his personal account. In 1922, he sold one of the pieces of real estate of which the mother had died seized, and, in the year following, a second. Two years later he executed a mortgage on a third property, later paid off, and, in 1927, placed a new lien for $5,000 on the same premises, which also was cancelled in 1928. He later executed a third mortgage for $8,000, which still remains of record.

Upon learning of these transactions, Augustus, the oldest son, who had prepared the false instrument probated, under the promise and understanding that it would be used to furnish only a temporary show of credit, the entire estate to be ultimately divided into equal parts among all of the children, accused James of violating his trust. A quarrel ensued, which led to the calling of the police, to whom Augustus narrated the story as repeated in court, which was not at the time denied by James. The former demanded that both be taken to the station house so that the true facts might be officially made known. After this dispute, James went

immediately to the late home of his mother, and secured her personal papers, including the unprobated will of the father, charged to have been used by Augustus in framing the supposed testament now in question.

The other heirs were then first advised of the true situation, and promptly filed a bill in equity to set aside the forged will, which proceeding was followed by an application to the register of wills to set aside its probate. This latter application was made on April 6, 1929; though called an appeal in the docket entries made by the register, yet the papers disclose that the whole record was promptly transmitted to the orphans' court as raising a disputable question, and, on April 12th, that court issued a citation calling on the parties in interest to show whether the document complained of was in reality a forgery, and to determine if in fact Mrs. Culbertson had died intestate. James demurred to the petition of the contestants making this request, asserting that the accepted will had been properly executed and proven, and averring that the letters granted could not be revoked, since twelve years had elapsed from the time the register acted,—legal propositions to be discussed later in this opinion. The court overruled the demurrer, directed an answer on the merits, and, to the one filed, a replication was entered by contestants. If the orphans' court had power to pass upon the disputed question, the objections were raised in the manner provided by the Register of Wills Act (June 7, 1917, P. L. 415), for it permits controversies, arising from the probate of a last will, which are difficult and in doubt, to be certified to it for consideration and determination: Beach's Est., 299 Pa. 293.

The parties were personally heard by Judge GEST, and his findings of fact, attesting the truth of the statements heretofore set forth, approved by the court in banc, fully cover the contentions raised by the respective parties. It is needless, in passing upon the merits of the case, to refer to the unbroken line of authorities

444

which hold that the facts as determined by the orphans'
court are conclusive upon us where based upon sufficient
evidence, and an examination of the record shows those
made here to have been fully justified. Augustus ad-
mittedly forged the will, with the understanding that
its effect should be only nominal, and the estate divided
equally among the children entitled thereto. James con-
tradicted this assertion, denying any part in the fraud,
both in his pleadings and on the witness stand, though
he failed to disclaim the truth of the story told by Au-
gustus when first accused of wrongdoing, and the truth
of his contention is refuted by the circumstances. The
discovery of the will in the same bureau drawer, after
the careful search following the mother's death had
proven fruitless, the apparent duplication of the lan-
guage used by the father in his testament, the unusual
disposition made by the testatrix of her property, and
the appointment of a boy less than twelve years of age
as executor, all tend to corroborate the statement made
by the older brother, as found by the hearing judge, the
court in banc, on the first hearing, and, on the second,
after the record was remitted by this court, after appeal
and argument, for further examination.

In addition to his oral evidence, the proponent relied
upon the fact that testimony had been produced orig-
inally before the register to show that the written names
of the two deceased witnesses to the will,—the same as
those appearing on that of the father,—were genuine
(the mother's signature to the purported document hav-
ing been indicated with a mark). It was therefore nec-
essary, under the circumstances, to furnish such evi-
dence to give to the register jurisdiction to proceed
(see section 3, of the Wills Act, June 7, 1917, P. L. 403),
but the court has found, as to at least one of them, that
there was no sufficient testimony of the handwriting to
justify the acceptance of the proof offered. Judge VAN
DUSEN, acting for the court in banc a second time, after
the matter was remitted for further consideration, be-

cause of after-discovered evidence, said: "The validity of the will depended on these signatures...... The hearing judge found, on a comparison with genuine signatures, that one of the signatures of the witnesses to the will was false. The will thus falls without any resort to the testimony of Augustus Culbertson, the forger." The reason for returning the record, and the resulting action of the chancellor and court in banc, is set forth in Culbertson's Est., 14 Pa. D. & C. 147, to which reference is made for further discussion of the merits of the case.

The story of the maker of the false instrument found corroboration in the circumstances already referred to, and it was for the court to determine whether he or James, the executor and principal beneficiary, who denied knowledge of the forgery, was telling the truth. Both brothers were interested, for, if the will was set aside, the share of the former would be increased and the latter reduced. The court saw and heard the two witnesses, one of whom, testifying to the fraud, was in many respects corroborated, whereas the evidence of James, though denying on the stand the wrongdoing, was the subject of suspicion, under the circumstances disclosed. The findings of fact of the chancellor were approved by all the other judges sitting in banc, and the conclusions reached reaffirmed when the case was reheard, when returned to receive additional testimony, as already noted. The decree entered followed a proper certification of the disputed matter to the orphans' court, and should be sustained unless some legal principle makes impossible the setting aside of the will because of the lapse of time, as appellant insists.

It is urged that the letters testamentary, granted more than twelve years prior to the institution of this proceeding, cannot be revoked, though it appears that the will presented was a forgery and received because of fraud practiced upon the register. The Acts of March 15, 1832, section 31, P. L. 135; April 22, 1856, section 7,

P. L. 532, and June 25, 1895, P. L. 305, are practically repeated, in so far as a limitation is placed upon the time for taking an appeal, by the Register of Wills Act of 1917, supra, which makes the probate conclusive as to all property, unless an appeal is taken within two years, thus supplanting the first statute, which designated five, and the second, three, as the time for asking a review. In the present case, the record has been certified to the orphans' court to correct an error resulting from the fraud practiced upon the register in presenting to him a will, executed with a mark, and attested by two parties purporting to be witnesses, one of whom was shown not to have signed the paper in question. The register had jurisdiction to probate only if two persons had witnessed the unsigned instrument, and the court has found that no such subscription took place. As a result, there was no will, and no act of the officer could make the paper presented such, if none at any time existed. The invalidity of an entirely void writing was declared in Wall v. Wall, 123 Pa. 545, where the letters granted were based on an unexecuted but witnessed instrument, the register finding an intention of the deceased that the paper should be treated as a last testament. Though judgments usually render matters res judicata, yet fraud in the securing of one unwarranted, as appears here, may render it worthless: Rubinsky v. Kosh, 296 Pa. 285; Mitchell v. Kintzer, 5 Pa. 216. To the same effect are Jackson v. Summerville, 13 Pa. 359, and Phelps v. Benson, 161 Pa. 418. The present proceeding was a direct attack on the grant of letters testamentary, and not merely a collateral one, a distinction recognized in Cochran v. Young, 104 Pa. 333, 338. The jurisdiction of the register is limited to the determination as to whether the paper presented has been legally executed as the will of the deceased, and if his action has been induced by fraud the order following is void and may be set aside: see McCambridge v. Walraven, 88 Md. 273, 41 Atl. 928; Holton v. Davis,

108 Fed. 138; Wall v. Wall, supra. See also Smith v. Markland, 223 Pa. 605.

Judgments in the ordinary course may be avoided by proving extrinsic fraud, by which is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. And where this appears, an original decree entered may be vacated: McFadden v. McFadden, 91 Pa. Superior Ct. 301; Willetts v. Willetts, 96 Pa. Superior Ct. 198. Though the exact question here presented, attacking the probate of a will after the time fixed by the statute for an appeal has passed, for fraud and imposition on the officer, has not been expressly determined by this court, yet final orders have been set aside, in other classes of proceedings, where a time limit for review was fixed by statute: Zeigler's Petition, 207 Pa. 131; York Co. v. Thompson, 212 Pa. 561; Lackawanna Co.'s Appeals, 296 Pa. 271. The cases cited dealt with proceedings in which accounts of officers were assailed for fraud, after the period designated by act of assembly for taking an appeal.

There is nothing in the present case which would justify the declaration that the contestants were guilty of laches, since their direct attack upon the will, in having the disputed question certified by the register to the orphans' court for determination, was made promptly upon the discovery of the forgery admitted by the older son, Augustus: 37 C. J. 929. All of the heirs at law have joined in this proceeding except James, who was the proponent of the will. The one distributee not in this class has been paid, and the only other parties suggested as having any interest are grantees of the land from James, as well as those who have in good faith advanced moneys on the mortgages against the realty, but they are not necessary parties, for no relief is asked against them, and such is expressly disclaimed.

It is true that under the Fiduciaries Act of June 7, 1917, P. L. 447, section 5, acts of administration alone in reference to real estate are expressly protected where

letters are subsequently revoked as in the case of the discovery of a subsequent will. But, by the Register of Wills Act, supra, section 21 (b), it is provided that "no appeal from any decree of the register concerning the validity of a will, or the right to administer, shall suspend the powers or prejudice the acts of any executor or administrator to whom letters have been granted." More than two years having elapsed since the probate of the will in question and the giving of the mortgages, the rights of the grantees or mortgagees could not be affected. No collateral attack on the conveyances made would be permitted, as held under the Act of 1856 (Cochran v. Young, supra), and the later legislation (Rubinsky v. Kosh, supra; McManus's Est., 285 Pa. 74; Opp v. Chess, 204 Pa. 401; Baker's Est., 244 Pa. 350; Stout v. Young, 217 Pa. 427; Bunce v. Galbrath, 268 Pa. 389), and no direct attempt to set them aside is here made, nor is relief asked against those so interested. It was not necessary that these persons be brought on the record in this proceeding. "Any objections to the joinder of......individuals as parties is obviated, however, by waiver of any request for relief against them, as here expressly appears: Brown v. McCullough, 60 Pa. Superior Ct. 98. It is not necessary to join persons against whom no redress is sought: 21 C. J. 262"; Erie Co. v. Lamberton, 297 Pa. 406, 413.

Many of the cases cited in the very able brief of counsel for appellant hold that failure to promptly seek relief, after the discovery of fraud practiced, deprives the party complaining of the power to assert rights. Others refer to decisions where a like result was reached because the attempt was made to set up the wrongdoing in a collateral proceeding. None controls the present situation. After a careful review of the entire record, we are convinced that a proper legal conclusion was reached, in view of the facts justifiably found.

The decree of the court below is affirmed at the cost of appellant.