## Moore's Estate

*Arthur P. Reid, H. R. McCowan,* and *T. D. Wade,* for exceptant.
*William Toal, Henry Gouley,* and *Philip Reilly,* contra.

WINDLE, J., October 2, 1933.—Harry C. Moore, the above-named decedent, died a resident of Chester County on March 30, 1930. On April 24, 1930, an instrument purporting to be his will was presented for probate to the register of wills of this county and was duly admitted to probate. Therein one Hannah Swartz was named sole legatee. She renounced her right to letters of administration c. t. a. and requested the appointment of Charles A. Zell as administrator

of the estate, whereupon said appointment was made. Zell duly filed the necessary bond, inventory, and appraisement and proceeded to administer the estate. On July 15, 1930, Mary Emeline Willis, a niece of decedent and one of the next of kin, took an appeal from the action of the register in probating said instrument as the last will of Harry C. Moore and granting letters c. t. a. thereon, on the ground that said will was a forgery. An issue was duly awarded to the court of common pleas, and on November 11, 1931, a jury rendered a verdict in favor of appellant, thus finding that the will was in fact a forgery. Subsequently, on July 25, 1932, the letters of administration granted to Charles A. Zell were revoked by the orphans' court, and thereafter the register of wills appointed Mary Emeline Willis, above named, administratrix of the estate. The said Charles A. Zell then, on October 25, 1932, filed his first and final account as administrator c. t. a. of said estate. To this account exceptions were filed by said Mary Emeline Willis, administratrix, whereupon the court appointed an auditor to audit and examine the account and make report thereon. Certain of the exceptions were withdrawn at the hearing before the auditor, and others were dismissed by him. Some, however, he sustained in his report and to his action in so doing exceptions were filed on behalf of Zell. They were considered by the auditor in a supplemental report, wherein he affirmed his former conclusions. These exceptions are the ones now before us for consideration.

The only question raised by these exceptions is whether or not the expenses of administration incurred by Zell while he was administering the estate prior to the revocation of his letters are properly chargeable against and payable out of the assets of said estate. Said expenses, as they appear in the credit side of his account, are the premiums on his surety bond, $210; rental of safe deposit box, $3; attorney's fee, $400; and commissions to accountant, $458.97 on the principal, being 5 percent of the gross amount of the estate, and $51.63 on income—a total of $1,123.60. A supplemental question also arises as to the propriety of the auditor's action in placing the costs of the audit, in the amount of $161, on Zell.

The credit items above referred to include only the expenses of the administration conducted by Zell. An examination of the items themselves in the account establishes that fact. The respective amounts thereof are not questioned by Miss Willis, counsel for her at the time of the oral argument stating he did not consider them, mentioning specifically the counsel fee claimed, unduly large for an estate of the size of this one. We are therefore concerned only with determining the legality of such credits without reference to their amount. Further, the bona fides of Zell throughout the whole transaction is not questioned, but it is admitted that he was without knowledge of any forgery or fraud in the preparation of the will or its presentation for probate.

Under all the circumstances, we have no hesitancy in concluding that the expenses referred to are proper items of credit to be allowed the administrator. They include no expenses incurred in the contest of the will and the trial of the issue d. v. n. in the court of common pleas. If they did, a very different question would be presented. Nor is the administrator charged with any guilty knowledge making him in any way a party to the fraud endeavored to be perpetrated. It is admitted by counsel for Miss Willis that he acted in all good faith in taking out letters, filing the bond, renting a safe deposit box, and employing counsel. He safeguarded the estate, collected income on the investments, and paid the usual and ordinary expenses of such an administration. He did what any administrator should have done. We see no reason why he should not receive

credit for his payments complained of. If he had been a party to the fraud here undoubtedly present, again a different question would have been presented, but he was not, and we do not have to consider such a situation. His conduct was in all bona fides, and he cannot therefore be punished for the wrongdoing of another of which he had no knowledge, actual or constructive.

We cannot agree with the position of the present administratrix that the fraud of Hannah Swartz, or whoever was guilty thereof, in forging the will and thereby obtaining the grant of letters c. t. a. to Zell, vitiates all the latter's transactions in administering the estate. True, Hannah Swartz renounced her right to letters of administration c. t. a. and requested his appointment, but that does not fasten upon him any knowledge or consequence of her fraud, if the fraud was hers, which, while it may be a fair assumption, is not established on the record. His relation with her created by such renunciation and request does not render him even constructively guilty of fraud in the matter. He is not her agent in any sense of the word—certainly not so as to taint him and his acts under his appointment by the register with her fraudulent misconduct, if any there be. And if she was not the guilty person, as is possible even though not probable, counsel's whole argument falls. In fact, she asks us to decide this matter in her favor, relying on the mere assumption that Hannah Swartz committed the forgery, for no such fact has been definitely established by proofs either in the common pleas or in the orphans' court. But, aside from this, we believe that even if she were the guilty person, if Zell knew nothing of the wrongdoing, his expenses of administration were properly incurred, and credit therefor should be allowed him. He certainly has done nothing to warrant imposing them upon him. He was in fact obliged to incur them under the appointment from the register of wills—he was obliged to administer the estate, and to do so he had to pay the sums in question and was entitled to his own compensation. He may not look to the register of wills for them nor to Hannah Swartz—she merely renounced in his favor, and he is not engaged or employed by her—she is not liable to him for such expenses. There is no reason why he, an innocent man, should pay them out of his own pocket—especially when the estate got the benefit thereof. True, it may be unfortunate for the heirs if their shares are cut down by the duplication of fees and expenses, but that is a hardship which might have been avoided by a petition for the appointment of an auditor to distribute rather than taking out other letters of administration, as counsel for Zell suggests, and, if not avoidable, the fault for which presumably lies at the door of Hannah Swartz and not of Charles A. Zell. If anyone were to be punished therefor, it should presumably be the former and certainly not the latter. The suggestion that upholding the validity of such expenditure opens the door and renders it easy for evilly-disposed persons to forge wills in their favor and have letters c. t. a. granted to innocent third parties is not persuasive or controlling—the question is what is the legal status of the matter.

Sheetz's appeal, 100 Pa. 197, cited by counsel for Miss Willis, is no authority supporting her position. There the claim against the estate was for counsel fees and witness fees incurred in the trial of an issue in the common pleas wherein the jury found that the will was a forgery, and was not for expenses of administration at all. The court held that they could not be paid out of the assets of the estate and affirmed the lower court in disallowing such claim in the account filed. Here Zell asks credit for no such expenses but confines his claim solely to administration costs. That case therefore does not rule the present one. Nor does Culbertson's Estate, 301 Pa. 438, support the proposition for which counsel cites it. Therein the court holds, as it has any bearing on this case, that where extrinsic fraud appears an original decree may be set aside

186

and vacated, saying (p. 446) : "The jurisdiction of the register is limited to the determination as to whether the paper presented has been legally executed as the will of the deceased, and if his action has been induced by fraud the order following is void and may be set aside". That does not mean that all acts done in good.faith in reliance on the original decree are void and, as counsel's brief contends, nullified, destroyed, and rendered nugatory. That case does not govern the present situation.

By reason of the views above expressed, we conclude that the credit items objected to in the account of the administrator c. t. a. should be allowed. Since Zell's action is sustained, there is no reason why he should bear the costs of the audit. They will be paid by the estate.

Exceptions to report of auditor sustained.

Account of administrator c. t. a. confirmed absolutely.