**Frank Estate**

*Walter Sandercock*, for exceptant.
*Eugene W. Lederer*, for executors.
*Delbert McQuaide*, for residuary legatee.

CAMPBELL, P. J., March 30, 1970.—Daniel Grimnison Frank, Centre County's most enthusiastic and brilliant checker player, died October 17, 1966. His will dated June 22, 1966, was probated on October 19, 1966, two days following his death. His will contained a bequest of $10,000 in trust for the Pennsylvania State Checker Association and also made the association a contingent residuary legatee.

At a checker tournament held on the Penn State campus on September 2, 1966, decedent signed and delivered to representatives of the Pennsylvania State Checker Association, Inc., and the State College Memorial Checker Fund (hereinafter called the Checker Association) the following instrument:

"BEQUEST:

"Date Sept. 2, 1966

"TO WHOM IT MAY CONCERN:

"I, Daniel G. Frank of State College Pa., Centre Co., Pa., do hereby bequeath the sum of $10,000.00 (Ten Thousand Dollars) to be given after my demise to the Chairman of the State College Memorial Checker Fund to be deposited in this fund, which already has been established as under the terms of the will and bequest of Mr. Daniel G. Frank of State College, Pa.

"I do this in order that the organized game of checkers may be promoted in the future to help create enjoyment, competition, good fellowship, and that suitable awards to successful competitors might be made. It is also understood and desired that all donors who make bequests will be memorialized by a placque which will be displayed at the playing site of every tourney

where funds from the Memorial Fund are involved in the tourney.

"Signed Daniel G. Frank, Donor
"Elliott R. Baker, Witness
"Joseph Bassett, Witness"

The above instrument was not offered for probate nor presented to the executors until after they had filed their first and final account on August 2, 1969. The Checker Association filed exceptions alleging that the executors had not set aside the sum of $10,000 for the bequest made in the instrument dated September 2, 1966. The defense of the executors was that the alleged bequest of September 2, 1966, could not be lawfully paid for the reason that the writing upon which it was based had not been probated and that the proper procedure was to appeal from the probate of decedent's will.

The association thereafter, on December 1, 1969, appealed from the probate of decedent's will dated June 22, 1966, and petitioned this court for a rule to show cause why the appeal should not be sustained and why the decree of the register of wills should not be opened to enable the probate of the later testamentary writing. The executors and the primary residuary legatee filed an answer averring that the appeal should be dismissed for the reason that it was not taken within two years from the date of the original probate, which is contrary to section 208 of the Register of Wills Act of 1951, as amended, 20 PS §1840.208.

Testimony was taken in which it was clearly indicated by an eye witness that decedent signed the instrument entitled "bequest" dated September 2, 1966, above referred to, and that the same remained in the hands of the officers of the Checker Association until

presented to the court as an exhibit. Three years and one month had elapsed between the original probate of decedent's will and the instant appeal.

This is a most unusual case and appears different from any known previous cases involving section 208 of the Register of Wills Act. The petitioners contend that the writing in question is a codicil. The appeal, therefore, raises no question whatsoever with respect to the validity of decedent's will dated June 22, 1966. It does not attempt to contest its validity in any way. On the contrary, it is an addendum or supplement to the original will. The only effect of the instrument, if probated, would be to make an additional specific bequest and reduce by a like amount the amount to be received by the primary residuary legatee. In reality, it would have the effect of an unpaid bill or claim against the estate.

In view of the language expressed by the late Chief Justice Moschzisker in Sebik's Estate, 300 Pa. 45 (1930), this court has serious doubt as to whether or not an appeal is really necessary. We quote from the opinion as follows, pages 47-48:

"We agree with the court below that, in a case like the present, where there has been a prior probate of a paper thereby accepted as the last will of the decedent, and an alleged testamentary writing bearing a later date is subsequently discovered, it is necessary, *when the latter is not merely a codicil to the former*, for its proponent to appeal from the earlier probate." (Italics supplied.)

We further quote, page 51:

"Finally, it should be noted that this case has been treated by all persons concerned on the *basis that the previously probated paper and one now offered for that purpose are antagonistic to one another, not as though the latter were merely supplemental to the*

*former;* and this opinion should be read and understood with that fact also in mind." (Italics supplied.)

We recognize a real split of authority in Pennsylvania in the application of the time limitation for taking an appeal from the probate of a will.* This case does not involve fraud or any of the well-recognized situations where courts have by grace allowed appeals. Likewise, it should be noted that no distribution has been made in this estate nor will the allowance of this appeal affect the sale of any property or interfere in any way with any rights of third parties. Thus, it would appear that no one would suffer prejudice.

It is quite clear, also, that petitioner, through its officers, knew of the death of decedent, they having attended his funeral; and that they knew of the existence of the bequest of September 2, 1966, inasmuch as they had it in their possession. Nevertheless, the court is not inclined to apply the doctrine of laches for the one year and one month delay in the appeal for the reason that an appeal may actually not have been required and, since no rights of third parties have intervened, no one has been prejudiced.

And now, to wit, March 30, 1970, the appeal of the Pennsylvania State Checker Association, Inc., and the State College Memorial Checker Fund is sustained and the decree of the register of wills dated October 19,

---

* This conflict may be found between those courts which strictly construe the two-year limitation, limiting an appeal to only two judicially recognized situations, and those courts which liberally construe it and allow an appeal when justice so requires and no prejudice is shown. See Culbertson's Estate, 301 Pa. 438; Miller Estate, 15 D. & C. 2d 43; Vanko Estate, 8 Fid. Rep. 217 (1958); Caldwell Will, 20 Fid. Rep. 50 (1969) (allowing appeals only upon a showing of either fraud or forgery). Cf. Hetzel's Estate, 87 Pitt. Leg. J. 499 (1939); Palm Estate, 1 Fid. Rep. 572 (1951); Keiper Will, 8 Fid. Rep. 647 (1958).

1966, admitting to probate as the last will and testament of Daniel Gremnison Frank, deceased, the writing dated June 22, 1966, which is entered of record as Will No. 8946, is opened to permit the register of wills to receive and act upon a petition for the probate of a later writing dated September 2, 1966, and the record is remitted to the register for this purpose.