HAMILTON IRON & STEEL CO. v. GROVELAND MINING CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 16, 1916.)

No. 2733.

1. EVIDENCE ☞416—PAROL EVIDENCE—CONTRACTS.
    In an action on notes for price of iron ore, where defendant claimed that sale was made in July, while plaintiff asserted that sale was consummated in October, and the contract entered into in October, a contract then executed and preliminary letters leading up to its execution were admissible on this issue.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1903–1905; Dec. Dig. ☞416.]

2. SALES ☞52(5)—ACTIONS—EVIDENCE.
    In an action on notes given for the purchase price of iron ore, evidence held to show that the contract was not consummated until October following delivery, when the terms were fixed.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 136, 137, 139; Dec. Dig. ☞52(5).]

3. EVIDENCE ☞441(9)—PAROL EVIDENCE—CONTRACTS.
    Though a statement by the seller of iron ore as to the percentage of manganese constituted an express warranty under the Uniform Sales Act of Ohio (Gen. Code, § 8392), the subsequent execution of a written contract, omitting any such statement, merged in it all prior representations, so that, as it omitted the warranty, the buyer could not rely thereon.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1732, 1787, 1790, 2035; Dec. Dig. ☞441(9); Sales, Cent. Dig. § 721.]

4. EVIDENCE ☞441(9)—PAROL EVIDENCE—CONTRACTS.
    A seller's warranty as to the percentage of manganese contained in iron ore is a warranty relating directly to the sale, and is not a collateral

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

undertaking, and therefore such warranty is merged in a written contract subsequently executed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1732, 1787, 1790, 2035; Dec. Dig. ⊜441(9); Sales, Cent. Dig. § 721.]

5. APPEAL AND ERROR ⊜1068(3)—REVIEW—HARMLESS ERROR.

Where plaintiff was entitled to judgment and verdict in its favor under the undisputed evidence, errors in instructions are not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4227; Dec. Dig. ⊜1068(3); Trial, Cent. Dig. §§ 475, 480, 525, 526.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Action by the Groveland Mining Company, a corporation, against the Hamilton Iron & Steel Company, in which J. B. Courtney, trustee in bankruptcy, was substituted as plaintiff. There was a judgment for plaintiff, and defendant brings error. Affirmed.

W. M. Shohl, of Cincinnati, Ohio, for plaintiff in error.
C. B. Matthews, of Cincinnati, Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This is an action at law brought by The Groveland Mining Company, a Michigan corporation, against The Hamilton Iron & Steel Company, an Ohio corporation, on three promissory notes, executed and delivered in payment for iron ore sold by the Groveland Company to the Hamilton Company. The Hamilton Company in its answer and cross petition admitted the execution and delivery of the notes, and plead by way of counterclaim, damages accruing to it in excess of the amount of the notes by reason of an alleged breach of warranty in reference to the percentage of manganese in a portion of the ore. J. B. Courtney, trustee in bankruptcy of the Groveland Company, was subsequently substituted for it as plaintiff in the suit. There was a verdict and judgment in favor of the plaintiff for the full amount of the notes sued on; and the defendant has brought this writ of error for review.

The entire controversy relates to the alleged warranty as to the manganese.

The defendants' answer and cross petition alleged, in substance, that on July 20, 1910, the plaintiff represented and warranted to the defendant that the iron ore in question did not contain more than .70 per cent. of manganese, and that, relying on such representation and warranty, it purchased the ore on July 22, 1910; that the ore in fact contained 1.34 per cent. of manganese; and that by reason of the excess of manganese and breach of warranty it had been damaged as claimed. The plaintiff's reply to the answer and cross petition denied generally all of these allegations.

The testimony introduced on the trial consisted mainly of documentary evidence, including a voluminous correspondence between the parties from January 11, 1910, to October 13, 1911, relating to the sale and purchase of the ore and their course of dealing and settlements

and adjustments in regard thereto. The evidence showed, however, without dispute, that the ore in fact contained more than .70 per cent. of manganese; and there was also evidence tending to show material damage resulting to the defendant in consequence. On the question of the warranty the main contention of the defendant was that, as shown by the correspondence, the plaintiff sold it the iron ore on or about July 22, 1910, on a written representation and warranty as to the percentage of manganese; while, on the other hand, the plaintiff contended that the correspondence showed that no contract of sale had been made in or about July and that the entire terms of the sale had been embraced in a written contract executed by the parties on October 10, 1910, containing no representation or warranty whatever as to the manganese. And, in the alternative, the defendant insisted that even if the October contract were the sole contract between the parties, that nevertheless the prior correspondence contained an affirmation of fact as to the percentage of the manganese, on which the defendant relied, and which hence constituted a warranty under the provision of the Ohio Uniform Sales Act embraced in section 8392 of the General Code.

The trial judge submitted to the jury the questions whether the contract between the parties was made in July or on October 10th, and whether there was a warranty of the manganese. The defendant has assigned various errors relating to the admission of evidence, the charge of the court and refusals to charge.

[1] 1. There was no error in admitting in evidence the contract of October 10, 1910, and the preliminary letters passing between the parties relating to its execution and transmission. This evidence was material on the question whether the parties had in fact completed the contract of sale on or about July 22d or whether the terms of the contract of sale were intended by them to be entirely embraced in the contract of October 10th; this being clearly a matter in issue under the plaintiff's denial that the ore had been bought on July 22d on a representation and warranty as to the manganese, as alleged in the defendant's answer and cross petition.

[2, 3] 2. The undisputed evidence shows the following material facts: The Groveland Company, which was engaged in mining iron ore in the Lake Superior region and is hereinafter designated the plaintiff, had sold the defendant, the Hamilton Company, which was engaged in the manufacture of iron, some of its ore in the season of 1909. In the spring of 1910 the plaintiff, through its agent, both by correspondence and conference, endeavored to sell the defendant a large quantity of ore for use during the current season, offering it first at the former price, namely, $3 a ton; although the general market price of Lake Superior ore for the 1910 season was 50 cents higher than the preceding year. The defendant expressed a desire to use the plaintiff's ore on account of its cheapness, but criticised it on the ground of its large percentage of manganese, constituting a detrimental element. The analysis of the ore submitted by the plaintiff from time to time in the course of the correspondence showed considerable fluctuation in the percentage of manganese, which apparently changed with the progress of its mine workings. On June 15, 1910,

the plaintiff wrote offering the defendant from ten to fifteen thousand tons at a price per unit of iron, approximating, as the evidence shows, $2.50 per ton (an admittedly cheap price); to which no reply was made. On July 15th the plaintiff sent the defendant an analysis of twenty-two cars of ore, showing low phosphorus and silica, and manganese running from .41 to .56 per cent., and stating that it stood in a fair position to give lower manganese than anticipated, and requesting an order for all the defendant could take under these conditions. On July 18th the defendant wrote that it would be glad to take 2,500 to 3,000 tons of ore of approximately this analysis. On July 20th the plaintiff wrote, enclosing its last analysis of the ore, showing manganese .70 per cent., and stating that it would immediately ship a cargo of about 3,000 tons for the defendant's account. On July 22d the defendant wrote that it would be pleased to receive the 3,000 tons and noted the analysis. This shipment was duly made, the cargo containing 3,128 tons; and on receipt by the defendant was found to contain manganese largely in excess of .70 per cent. In the ensuing correspondence between the parties mutual disappointment was expressed at this result, and the defendant wrote that it could not take any more of the ore until it could get a definite idea of what it was to receive. Subsequently, on August 9th the defendant requested an invoice for the shipment, stating that it understood it "was to be on the basis of $2.50, leaving any adjustment there may be on account of the quality, for a later period." The plaintiff sent the invoice as requested, stating that: "As to the adjustment, that matter can be taken up later." On September 27th the plaintiff requested the defendant to send it two $2,500 notes on account of the ore, and stated that it would "make up a contract covering the amount of the ore" delivered, and send it to the defendant for execution. The defendant executed and forwarded the two notes as requested. On October 7th the plaintiff mailed the defendant a triplicate contract for the ore which it had prepared and signed, stating in the letter of transmission that this was sent in accordance with the defendant's request. This contract was signed by the defendant on October 10th, and two of the triplicate copies returned to the plaintiff. This contract which, in its introductory clause recited that it was made April 30, 1910, was dated at the end October 10, 1910. It was a complete contract for the sale of the 3,128 tons of ore in question, with elaborate provisions as to delivery, payments and other matters. It contained no representation or warranty whatever as to the percentage of manganese or any reference whatever thereto. On the contrary it specifically provided that the price of the ore should be $2.50 per ton "named and accepted on the expectation that the ore will average .46 per cent. in metallic iron, natural state"; that this price should be subject to adjustment by increase or abatement in price at the rate of 5.43 cents per unit per ton for metallic iron; that in case of excess phosphorus above the agreed quantity settlement should be made according to the table of phosphorus values; and that the cargo should be analyzed by an independent chemist, mutually agreed upon, "and said analyses shall be final and the basis of settlement hereunder." Subsequently on December 9th the plaintiff transmitted to the defendant a statement of ac-

count showing the balance due on the ore under the contract of October 10th after crediting the defendant with the two $2,500 notes, and deducting $638.05 on account of the ascertained deficiency in the metallic iron (this adjustment leaving the net price of the ore at $2.30 a ton); and the balance thus shown to be due was subsequently paid in full by the defendant, in accordance with the provisions of the contract relating to deferred payments. The defendant also from time to time thereafter renewed the two $2,500 notes in question; the last renewals being two of the notes now in suit. On these facts and the other evidence in the case, the details of which need not here be set out, we are of opinion that it appears from the undisputed evidence, without material testimony or inference to the contrary, that the terms of sale were not finally agreed upon between the parties on July 22, 1910, or at any time prior to October 10th; that the contract executed October 10th, which purported on its face to be the entire contract between the parties in reference to the sale of this ore, is, and was intended to be, a final and complete statement of all the agreements of the parties in reference thereto; and, further, that it was not executed by the defendant in reliance upon any affirmation or representation in the prior correspondence as to the percentage of manganese in the ore, the defendant having full knowledge at the time it executed this contract of the exact percentage of manganese which the ore in fact contained. Furthermore, even if the statement in the plaintiff's letter of July 20th that the last analysis of the ore showed manganese .70 per cent., is to be construed as an affirmation of fact as to the percentage of manganese in the ore shipped, to which it did not on its face purport to relate, or is to be regarded as more than a mere indication of the probable percentage of manganese which might be expected, we are of opinion that such representation must be deemed to have been merged in the final contract. When a written contract is upon its face couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing in the contract. Seitz v. Refrigerating Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; Huntington v. Toledo Railroad (6th Cir.) 175 Fed. 532, 537, 99 C. C. A. 154. And this rule as to the merger of prior representations in a subsequent complete contract is applicable, as we have heretofore held in Marmet Coal Co. v. People's Coal Co. (6th Cir.) 226 Fed. 646, 650, 141 C. C. A. 402, to any prior representation relied on as an affirmation of fact constituting an express warranty under the Ohio Uniform Sales Act; such prior representation not being available as a warranty under that act when merged in a subsequent written contract purporting to contain the entire agreement of the parties.

[4] It is not now necessary to determine to what extent, if any, a prior representation as to a collateral matter, relating to a subject distinct from that to which the written contract applies, might be relied on as an express warranty under the terms of this act, as a representation not merged in the written contract under the qualification of the general rule of merger stated in Seitz v. Refrigerating Co., supra, 141

U. S. at page 517, 12 Sup. Ct. 46, 35 L. Ed. 837. Such qualification has, in our opinion, no application to the instant case, since, if any prior representation were made as to the percentage of manganese, it is clear that it related directly, and not collaterally, to the subject to which the written contract applied; that it was "so closely connected with the principal transaction as to form part and parcel of it"; and that hence, under the very terms in which the qualification to the general rule is stated, it must now be conclusively presumed to have been merged in the written contract. This conclusion as to the scope and effect of the contract of October 10th is furthermore in harmony with the entire conduct and course of dealings between the parties, which shows conclusively, without any material inference to the contrary, that they both regarded this contract as completely embodying the terms of sale and the undertakings and agreements entered into by them in respect to the quality of the ore sold and intended it to be the full and complete contract with reference to this matter, under the terms of which settlements should be made.

It results that, as the contract of October 10th must be held to have embraced the entire agreement between the parties, and as it did not contain any affirmation, representation or warranty as to the percentage of the manganese, and was not entered into on the faith of any such representation, affirmation or warranty, the defendant, on the undisputed evidence, did not make out a case entitling it to a submission to the jury of its claim for damages under the alleged warranty upon which it relied; and that, on the contrary, the plaintiff was, on the undisputed evidence, clearly entitled to a verdict and judgment in its favor on the notes on which it sued.

[5] 3. And finding as we do that upon the undisputed evidence the plaintiff was entitled to a verdict and judgment in its favor upon the notes in suit, so that no prejudicial error resulted to the defendant from the course taken in the trial below and a new trial would be a merely futile proceeding, we conclude, without passing upon the several assignments of error relating to the charge of the court and its refusals to charge, that, in accordance with the rule stated in Pensacola State Bank v. Thornberry (6th Cir.) 226 Fed. 611, 617, 623, 141 C. C. A. 367, the judgment below should be affirmed, with costs.

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes